UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SHEILA HIRSCHBACK,                                    Case No. 1:12-cv-713

       Plaintiff,                                              Barrett, J.
                                                                Bowman, M.J.
   v.

CAROLYN COLVIN
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Sheila Hirschback filed this Social Security appeal in order to challenge the Defendant's findings that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents three claims of error, all of which the Defendant disputes. As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

In June 2009, Plaintiff filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) alleging a disability onset date of November 30, 2000 due to physical and mental impairments. (Tr. 22, 159, 162, 179). After Plaintiff's claims were denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). An evidentiary hearing, at which Plaintiff was represented by counsel, was held on June 1, 2010. (Tr. 38-89). A

1

vocational expert, Janet Rogers, was also present and testified. On August 26, 2010, ALJ Kristen King denied Plaintiff's application in a written decision. (Tr. 19-37).

The record on which the ALJ's decision was based reflects that Plaintiff was 36 years old on her alleged disability onset date, with a high school education. (Tr. 30). Plaintiff had past relevant work as a material handler and cashier supplier. (Tr. 30).

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "chronic obstructive pulmonary disease, seizures, anxiety, and depression." (Tr. 24). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. The ALJ determined that Plaintiff retains the residual functional capacity ("RFC") to perform sedentary work with the following limitations:

> She can never crawl or climb ladders, ropes, or scaffolds, and she can occasionally climb ramps and stairs, balance, stoop, and crouch. She must avoid concentrated exposure to extreme cold, even moderate exposure to environmental irritants such as fumes, odors, dusts, and gases, and all exposure to the use of dangerous, unprotected machinery and unprotected heights. Mentally, she is able to perform simple and multi-step, routine, and repetitive tasks. She cannot perform production rate pace work, but instead can perform object-focused work. She can have only occasional interaction with the public, but no transactional type interactions, such as sales or negotiations. She is limited to a work environment with no more than occasional changes in the work setting.

(Tr. 26). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that, while the Plaintiff is unable to perform her past relevant work, she can nonetheless perform jobs that exist in significant numbers in the national economy,

including such jobs as hand packer, laborer and inspector. (Tr. 31). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB and/or SSI. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff first argues that the ALJ erred by: 1) failing to afford appropriate weight to the opinion of the consultative examiners; 2) finding that Plaintiff's testimony was not fully credible; and 3) failing to consider the combined effect of Plaintiff's impairments on her ability to perform other work.[1] Upon close analysis, I conclude that none of the asserted errors require reversal or remand.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant

---
[1] The arguments raised in Plaintiff's third assignment of error overlap with errors one and two and will therefore be included in the analysis of those errors and not addressed separately.

3

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can

4

perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

### B. Specific Errors

1. *ALJ's weighing of the opinion evidence*

Plaintiff's first assignment of error asserts that the ALJ failed to afford deference to the opinions of the consultative examiners. Specifically, Plaintiff contends that the ALJ erred in weighing the opinions of Dr. Fritsch and Dr. Sweedburg. Plaintiff's contentions will be addressed in turn.

In weighing differing medical opinion evidence, an ALJ considers the factors set forth in 20 C.F.R. § 404.1527(d)(2). These factors include: "(1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion, with respect to relevant evidence such as medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician rendering the opinion; and (6) any other factor raised by the applicant." *Meece v. Barnhart*, 192 Fed. Appx. 456, 461 (6th Cir.2006) (citing 20 C.F.R. §§ 404.1527(d)(2)-(d)(6)). More weight is generally given to an opinion offered by a medical source who has examined the

claimant over an opinion offered by a medical source who has not examined the claimant. 20 C.F.R. § 404.1527(d)(1). More weight is given to opinions supported by "relevant evidence" such as "medical signs and laboratory findings[.]" 20 C.F.R. § 404.1527(d)(3). Further, more weight is given to those medical opinions that are "more consistent ... with the record as a whole[.]" 20 C.F.R. § 404.1527(d)(3). After assessing the weight afforded to medical source evidence, ultimately, an ALJ can properly rely on the conclusions of a nonexamining, record reviewing physician to support an RFC assessment. *See Sullivan v. Comm'r of Soc. Sec.*, No. 1:07cv331, 2009 WL 648597, *13 (S.D. Ohio Mar.11, 2009). Such is permissible "because the Commissioner may view nonexamining sources 'as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act.'" *Id.* (citing Social Security Ruling 96–6p). Opinions offered by nonexamining physicians "are weighed under the same factors as treating physicians including supportability, consistency, and specialization." *Id.* (citing 20 C.F.R. § 404.1572(d), (f)). Thus, "under some circumstances, [opinions from nonexamining doctors can] be given significant weight." *Linton v. Astrue*, No. 3:07cv00469, 2009 WL 540679, *8 (S.D. Ohio Mar 2, 2009). In this case, no treating source provided an assessment relating to Plaintiff's work-related limitations or opined that Plaintiff is disabled.

      A. *Dr. Swedburg*

In August 2006, Plaintiff was examined by Phillip Swedberg, M.D., at the request of the state agency. (Tr. 292-301). Examination showed no muscle atrophy, full muscle strength, full sensation, and normal range of motion throughout her body, except for

some diminished range of motion in her dorsolumbar spine. (Tr. 292-294, 296, 301). Dr. Swedberg noted that Plaintiff had COPD, had smoked 1 pack per day for the past 20 years, and was still smoking 4 cigarettes per day. (Tr. 295). Yet, she denied shortness of breath, a chronic cough or chest pain. (Tr. 295). Dr. Swedberg also found that Plaintiff ambulated with a normal gait without the use of ambulatory aids, was comfortable in both the sitting and supine positions, and had perfect vision in both eyes. (Tr. 296). Her memory, ability to relate, appearance and orientation were good, and she had a normal level of intellectual functioning. (Tr. 296).

Dr. Swedberg also noted that while Plaintiff stated she was unable to work due to shortness of breath, she had never been hospitalized for respiratory problems, and continued to smoke despite her respiratory complaints. (Tr. 297). He wrote that "[d]iscontinuation of the use of tobacco products would obviously be beneficial," and she would "do best in a dust-free environment." (Tr. 297-298). "She had trace expiratory wheezes but no evidence of congestive heart failure. The rest of her cardiopulmonary examination was within normal limits." (Tr. 297). Based upon his examination, Dr. Swedberg found that Plaintiff "appears capable of performing a mild to moderate amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting, and carrying heavy objects." (Tr. 297-298).

In his evaluation of the opinion evidence, the ALJ gave Dr. Swedburg "some weight." As noted above, Dr. Swedberg concluded that Plaintiff would "do best" in a dust-free environment. (Tr. 297-298). The ALJ found, however, that the record did not support a limitation for a completely dust-free environment. (Tr. 29). Plaintiff appears to argue that the ALJ erred in failing to include Dr. Swedburg's dust-free limitation in

7

Plaintiff's RFC.  Plaintiff's contention is not well-taken and the ALJ's decision is substantially supported in this regard.

Here, although the ALJ did not require a completely "dust-free" work environment, the ALJ's RFC included the limitation that Plaintiff "must avoid concentrated exposure to extreme cold, [and] even moderate exposure to environmental irritants such as fumes odors, dusts, and gases." (Tr. 26).  Such a finding was consistent with Dr. Swedburg's examination results.  Notably, that "[s]he had trace expiratory wheezes but no evidence of congestive heart failure. The rest of her cardiopulmonary examination was within normal limits." (Tr. 297).  Plaintiff also denied shortness of breath, cough or chest pain.  As recently noted by Judge Hogan:

> We believe the ALJ reasonably accommodated Plaintiff's lung condition by his residual functional capacity assessment and resulting hypothetical question that Plaintiff avoid concentrated exposure to dust. Dr. Schapera did not restrict Plaintiff to a dust-free environment; he merely stated that Plaintiff would do best in a dust-free environment, an observation that would most likely be true of both the writer and the readers of this opinion. If levels of dust were to be problematic, there are masks readily available to employees at minimal costs.  We do not interpret Dr. Schapera's comment as requiring that Plaintiff work only in a bubble.  For the reasons stated above, we find the ALJ's residual functional capacity assessment and hypothetical question to be fair descriptions of Plaintiff's functional limitations. We find, therefore, that the ALJ's decision is supported by substantial evidence and should be affirmed.

*Fields v. Comm'r of Soc. Sec.*, 1:08CV827, 2010 WL 753352 (S.D. Ohio Mar. 4, 2010).

In light of the foregoing, the undersigned finds that the ALJ reasonably determined that Plaintiff should avoid concentrated exposure to extreme cold, [and] even moderate exposure to environmental irritants such as fumes odors, dusts, and

gases given her respiratory complaints.[2] Accordingly, the undersigned finds that the ALJ properly evaluated the findings of Dr. Swedburg.

B. *Dr. Fritsch*

With respect to Plaintiff's mental impairments, Stephen Fritsch, Psy.D., evaluated Plaintiff at the request of the state agency in September 2009. (Tr. 305-308). Plaintiff was well-groomed, cooperative and responded appropriately to all interview questions. (Tr. 306). Her speech was logical, goal directed and relevant. (Tr. 306). Dr. Fritsch noted that "[d]espite subjective feelings of depression, the claimant denies suicidal ideation, angry outbursts or other problems with emotional/behavioral control." (Tr. 306). Her affect was appropriate. (Tr. 306). Plaintiff was anxious, uncomfortable, nervous, and preoccupied with her health, but there was no indication of psychotic process. (Tr. 307). Despite complaints of forgetfulness, she "was alert, responsive and oriented to person, time, and place. She appeared appropriately focused and attentive during interview (indicated by good eye contact and minimal response latency to questions)." (Tr. 307).

Dr. Fritsch wrote that Plaintiff had "a disabled self-concept (perception and image of herself as one who is unable to handle life demands and unable to work productively)." (Tr. 307). Still, she was able to handle some household chores, prepare meals, do dishes, fold laundry, drive occasionally, and go shopping. (Tr. 307). Dr. Fritsch concluded that Plaintiff had no impairment in her ability to understand and follow directions; moderate impairment in her ability to maintain attention, concentration, persistence and pace with simple repetitive tasks; and no impairment in her ability to

---

[2] Furthermore, as noted by the ALJ, Plaintiff continues to smoke despite her respiratory complaints.

relate to others, including coworkers and supervisors.  (Tr. 308).  He also thought Plaintiff would have marked impairment in her ability to withstand stress and pressures associated with day-to-day work activity, but commented that at the time of this conclusion that Plaintiff was "not currently involved in a psychiatric treatment regimen" and that a "[c]ombination of counseling and psychiatric treatment should improve stress tolerance." (Tr. 308). He assessed a functional Global Assessment of Functioning (GAF) score of 52, indicating moderate limitations, and a symptoms severity score of 49, indicating serious symptoms.  (Tr. 308).

In formulating Plaintiff's mental RFC, the ALJ accepted Dr. Fritsch's diagnoses; however, he rejected his findings that Plaintiff had marked limitations in her ability to withstand stress and pressures associated with day-to-day work activity.  The ALJ found this conclusion was "inconsistent with the medical evidence of record as a whole, including findings on his examination."  (Tr. 29*).*  The ALJ also found that the longitudinal record does not supported a finding of marked limitations as to stress tolerance.  (Tr. 29).  Plaintiff appears to argue that the ALJ erred in rejecting this finding of Dr. Frisch and failed to give specific reasons for this finding.  Plaintiff's contention is unavailing.

As detailed above, however, Dr. Fritsch noted that Plaintiff was well-groomed and cooperative; she responded appropriately to all interview questions; her speech was logical, goal directed and relevant.  (Tr. 306). Plaintiff denied suicidal ideation, angry outbursts or other problems with emotional/behavioral control, and there were no indications of psychotic process.  (Tr. 306-307). She was appropriately focused and attentive during the interview; and had normal immediate recall, adequate delayed

recall, and had no difficulties accurately solving simple mental math problems. (Tr. 307). She was able to handle some household chores, prepare meals, do dishes, fold laundry, drive occasionally, and go shopping. (Tr. 307). As noted by the ALJ, such findings are inconsistent with a conclusion that Plaintiff has marked limitations with stress tolerance. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997) ("[A]ny claim by Dr. Austin that Walters suffered from impairments of disabling severity would not be supported by detailed, clinical, diagnostic evidence in his reports."). Moreover, despite his finding that Plaintiff was markedly restricted as to stress tolerance, he qualified this conclusion by noting that Plaintiff was "not currently involved in psychiatric treatment regimen" and that a "[c]ombination of counseling and psychiatric treatment should improve stress tolerance." (Tr. 308).

Furthermore, Dr. Rudy, a psychologist who reviewed Plaintiff's medical records in November 2009, concluded that weight should "not [be] given to the opinion of marked limitations in stress tolerance" because Plaintiff "sought treatment appropriately from her physician when psych[ological] symptoms recently recurred and has continued participating in care with this person." (Tr. 330). Dr. Rudy also noted that Plaintiff "followed through with referral for counseling," and demonstrated "appropriate coping," and thus, the "evidence supports moderate limitations in this domain." (Tr. 330). Additionally, Dr. Meyer, another reviewing psychologist who reviewed Plaintiff's mental health records in April 2010, noted that less weight was given to the consultative examiner [Dr. Fritsch], because Plaintiff had positive response to prescription medication and she had little other mental health treatment. (Tr. 410).

11

In light of the foregoing, the undersigned finds that the ALJ properly evaluated the findings of Dr. Fritsch.

2. *The ALJ's Credibility determination is substantially supported*

Plaintiff's second assignment of error asserts that the ALJ's credibility determination is not supported by substantial evidence. Specifically, Plaintiff asserts that the ALJ's credibility assessment failed to comply with the requirements set forth in SSR 96–7p. Namely, Plaintiff asserts that her subjective complaints were supported by the objective evidence or record. Plaintiff's contentions are unavailing.

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers v. Commissioner of Social Sec.,* 486 F.3d 234, 247 (6th Cir.2007) (citations omitted). In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir.2001). "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir.1994). The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec. of HHS,* 753 F.2d 517, 519 (6th Cir.1985). In this regard, Social Security Ruling 96–7p explains:

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other

> symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

SSR 96–7p.

In addition, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* The ALJ's credibility decision must also include consideration of the following factors: 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *See* 20 C.F.R. §§ 404.1529(c) and 416.929(c); SSR 96–7p.

While an ALJ may properly consider a Plaintiff's inconsistent statements and other inconsistencies in the record, the ALJ must also consider other factors listed in SSR 96–7p, and may not selectively reference a portion of the record which casts Plaintiff in a capable light to the exclusion of those portions of the record which do not. *See Howard v. Comm'r of Soc. Sec.,* 276 F.3d 235, 240–41 (6th Cir.2002). Further, a

credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter,* 307 F.3d 377, 379 (6th Cir.2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, her testimony, and other evidence. *Warner v. Comm'r of Soc. Sec.,* 375 F.3d at 392.

Upon close inspection, the undersigned finds that the ALJ properly considered the requisite factors in making her credibility determination. The ALJ's decision discussed Plaintiff's testimony regarding the frequency and intensity of her symptoms, her medications and side effects, and her treatment history. The ALJ found Plaintiff's testimony less than fully credible because other evidence did not support complaints of the severity she alleged. (Tr. 24-30). For example, although Plaintiff alleged disability in part due to seizures, the ALJ noted that an EEG report from November 2009 was within normal limits. (Tr. 28, 403). Furthermore, an MRI of Plaintiff's head taken on the same date showed only minimal nonspecific abnormalities and treatment notes from March 2010 show that Plaintiff's dizziness was improved. (Tr. 28, 369, 399-402).

Plaintiff argues that her complaints relating to her mental impairments are supported by the findings of Dr. Fritsch. However, as explained above, the ALJ properly rejected Dr. Fritsch's opinion that Plaintiff was markedly limited in her ability to withstand stress and pressures associated with day to day work activities. Notably, the ALJ determined that such findings were inconsistent with Dr. Fritsch's own findings and the longitudinal record as a whole. (*See supra*, p.11-12).

Moreover, as noted above, although Plaintiff stated she was unable to work due to shortness of breath, Dr. Swedberg also noted she had never been hospitalized for respiratory problems, and continued to smoke despite her respiratory complaints. (Tr.

28, 297). Thus, the ALJ properly considered that Plaintiff was advised to discontinue smoking on many occasions, yet she continued her use of tobacco products, which also undermined her complaints of disabling respiratory problems (Tr. 28-29, 286, 289, 297-298, 387-388). See *Brumett v. Comm'r of Soc. Sec.,* 1:07CV955, 2009 WL 690250 (S.D. Ohio Mar. 11, 2009) (the failure to stop smoking against medical advice can be properly considered in assessing credibility). *See also Sias v. Secretary of Health and Human Services*, 861 F.2d 475, 480 (6th Cir.1988) (claimant's failure to stop smoking was inconsistent with allegations of disabling pain and limitation).

In sum, the issue is not whether the record could support a finding of disability, but rather whether the ALJ's decision is supported by substantial evidence. *See Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir.1993). The ALJ properly evaluated Plaintiff's allegations in accordance with controlling law, and she reasonably concluded that they were not fully credible. The ALJ's credibility finding is entitled to deference and thus should be affirmed. S*ee Jones v. Commissioner of Social Security*, 336 F.3d 469, 476 (6th Cir.2003).

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT**: 1) The decision of the Commissioner to deny Plaintiff DIB and SSI benefits be **AFFIRMED** because it is supported by substantial evidence in the record as a whole; and 2) As no further matters remain pending for the Court's review, this case be **CLOSED.**

                                         */s Stephanie K. Bowman*
                                         Stephanie K. Bowman
                                         United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

SHEILA HIRSCHBACK,                      Case No. 1:12-cv-713

    Plaintiff,                               Barrett, J.
                                       Bowman, M.J.

    v.

CAROLYN COLVIN
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

16